May I please the court? My name is Stella Lai with the Law Office of Enrique Arevalo. I represent the petitioners, the Gomez family. I would also like to reserve two minutes for rebuttal. Thank you. The petitioner's issue is whether the adverse credibility finding was based on substantial evidence. We believe it wasn't. The petitioners testified consistently throughout their oral testimony providing direct and specific information regarding the persecution they suffered in Guatemala. As such, we believe that the oral testimony should be given its due weight. They testified under oath. They explained and answered all the judges' questions and also during the cross-examination. There is no material inconsistency in the oral testimony. They testified that the petitioners suffered persecution in the hands of the national police in Guatemala because they believed that he, due to his associations with different organizations, that he was a guerrilla, a subversive. Due to the persecution, he was interrogated, kidnapped, tortured. He suffered a cut on his leg, which caused him to be hospitalized for several days. His testimony is also consistent to what, to the injuries that he suffered, the cuts that he has on his body. Due to the persecution, they were forced to relocate to another city in Guatemala. His testimony was also confirmed by the female respondent, Mrs. Gomez, who also stated that she saw him at the hospital and that he was gravely injured. What about the discrepancy between the two asylum applications that he filed? I mean, they're quite inconsistent with each other, right? There are two asylum applications. One was filed in 1994. The petitioner distanced himself from the application because he stated under oath that the application was not reviewed with him by the notary who prepared the application. The petitioner did not speak English, did not understand the application. He simply signed it. Notably, the application for 1994 was lost by the service. It was never adjudicated. So therefore, the petition did not provide testimony regarding the asylum application because the content of the application is not true. In 1996, a subsequent asylum application was submitted. Although it's as well prepared by a notary, it's in a simple format, but it does contain the heart of his asylum claim, that he was persecuted by the National Police of Guatemala. The notary advised him to keep the story in simple format because he will have a chance to further expand and elaborate during the asylum interview, which petitioner did. They provided detailed testimony and further corroboration of the asylum application. Well, but the – apparently, didn't the asylum officer testify that there were – that his testimony at the asylum interview didn't contain some of the things that he was complaining about? Yes. Yes. The asylum officer did testify at the hearing. However, there were also contradictions and inconsistencies in the assessment report that the asylum officer prepared in comparison to his own handwritten notes that were not submitted into the record. The asylum officer deemed that the petitioner was inconsistent because on the application, he said that he was cut on the right leg versus the testimony on the left leg. However, that issue could have simply been resolved had the officer simply asked the petitioner to draw a diagram where his wound was. The second reason for the asylum officer to find him to be inconsistent was due to the dates when they relocated from one city of Guatemala to another. Again, that could have been simply explained and also in terms of the – it was also explained in detail by the petitioner, further elaborated by the female respondent when she also attended the asylum interview. Now, the third reason for the asylum officer's finding them as inconsistent was due to the student identification card that the petitioner submitted. However, that identification card was also submitted to the judge who deemed that she believed that the petitioner is a university student. And also in comparison to the assessment report and the officer's own handwritten notes, the officer admitted that he does not understand why there are contradictions. He couldn't explain why there are contradictions between those two documents. Okay. Also, I will ask another issue with respect to the asylum application. The 1996 asylum application, there was a box that was not marked to indicate that the petitioner was detained or interrogated or arrested. And then the immigration judge did give undue weight to that box that was missing. Our argument is that mere omission itself or failure to simply mark a box alone, it's not a reasonable ground to discredit someone's testimony. According to the asylum officer's assessment report, it does state that the petition was taken by the police, interrogated. That's all it says. Right. That's all it says. It says I was threatened to be killed and none of this detail, even though he's asked to state it in detail. Right. That's the reason why we doubt the accuracy of the assessment report and the officer's own notes because according to the petitioner, he did testify to all that. However, it's not written down on the notes. Well, it's not in the application either. It wasn't in the application either. The petitioner did explain that. Okay. He believed that he was able to explain his claim in much more detail at the asylum interview, which that was the reason for it, for the asylum interview. In addition, we would also like to address the issue of lack of corroborating evidence. The judge, based on average credibility, finding on the fact that the petitioner could not produce any corroborating evidence. However, the petitioner did explain in reasonable matter the attempts that they have taken in obtaining those documents, just that those documents are not available because her house was burnt down. They elicited her sister to look for those documents, and she was unable to do so. The hospital records are not to be located because the hospital has been moved. They attempted to hire an attorney in Guatemala to assist them. However, the attorney wanted to charge an extraordinary fees, which the petitioner could not afford. And we argue that the judge erred in saying, in placing undue weight on the fact that they could not provide some documents. But at the same time, he did have on him, however, his registration in the university. And we believe the judge should not be in a position to penalize him for having certain documents but not others. If you wish to take some time for rebuttal, you may do so. Thank you, Your Honor. May it please the Court, my name is Jennifer Lightbody on behalf of the respondent. The petitioners in this case have not shown that the record evidence compels the conclusion that they were credible. The immigration judge provided specific cogent reasons for finding petitioners not credible, and the board affirmed those with the addition that the petitioners did not or failed to explain the inconsistency between their 1994 application that they submitted to the INS and was signed under the penalty of perjury and the discrepancies between that application and the 1996 application. And I would point out that the petitioners' counsel in the brief and here at oral argument has consistently represented to this Court that the 1996 application was completed by an attorney. That is inaccurate. The record reflects that that application was completed by an attorney in her office. At page 336 of the record, with respect to the 1996 application, the question was, who helped you fill out that one, the 1996 application? Answer, a female attorney whose name I don't recall at this moment. Question, is she with the same offices that your current attorney is with? Answer, yes. So the statement that going to show that the inconsistencies were blamed on this notario is simply not supported by the record. And the fact that the notario with respect to the 1994 application may have said, well, you can tell the asylum officer later. Again, this 1996 application was filled out by an attorney from counsel's office that is here before this Court. So that doesn't explain the inconsistencies. In this case, the petitioner gave four different stories in support of the asylum application, one in support of asylum, one in the 1994 application, in which he claimed that he worked for the Guatemalan government and had problems with the guerrillas. Then in 1996, he said it was actually the police who were allegedly persecuting him because of his affiliation with two organizations. Those two applications are completely inconsistent. Then before the asylum officer, when he was supposed to elaborate on the claims made in his 1996 application, he failed to mention the details about when he was arrested by the police in 1992. And, by the way, with respect to the box on the 1996 application where he failed to state or indicate that he had been arrested, interestingly, in his testimony before the immigration judge on page 293, he states that the police told him he was arrested, but yet that didn't appear on his asylum application. So there's an inconsistency there. But with respect to his asylum interview, he never told the asylum officer things about the bag being put over his head with the intoxicating substance. He never talked about electrical wires being attached to his body that they cut him. He never mentioned any of that to the asylum officer. Is the wife's application derivative of the husband's, or is it separate? There's a separate application, Your Honor, and her testimony was also inconsistent with her asylum application. She filed one asylum application in which she did not claim she had been raped by the police, and she did not tell the asylum officer she had been raped by the police. And, in fact, the asylum officer in his assessment specifically indicated that she had not been raped. But then when she appeared before the immigration judge, she claimed that she thought she had been raped. She said, well, first of all, going back before the asylum officer, she indicated that the police had attempted to rape her, but that she made a lot of noise, and I believe there were people working on her home, and they came to her rescue and stopped the rape from happening. Then in her hearing before the asylum or before the immigration court, rather, she says she believes that she was raped. But what happened was she became unconscious, and when she woke, she was in the hospital, and based upon her injuries, she believed she had been raped. But there was no evidence in the record to support that. The hospital didn't tell her she had been raped. Her father didn't tell her she had been raped, and her husband didn't believe that she had been raped. So this ---- That the petitioners were not credible and denied their application for asylum on that basis. There's not much analysis in the decision with respect to the wife. All the analysis of the I.G. goes to the husband's testimony, right? Well, I believe that there is some analysis, Your Honor. She ---- Very little. Well, there is some, though. There was the fact that she didn't indicate that their house had been burned down. Neither she nor the husband had indicated that. The fact that she didn't talk about the fact that she and her husband were in the hospital. And so there was some discussion about it. But most of the testimony did center around the husband, and indeed the immigration judge did focus on the inconsistencies with respect to the husband's application, but also found that the wife's testimony was inconsistent with her asylum application. And so what we essentially have is four, and depending on how you look at it, five different stories. And based on that, the immigration judge made a determination that the petitioners were not credible, and that's supported by substantial evidence in the record. And I would also ---- The Petitioner's Council points out the fact that there was some testimony with respect to the asylum officer and a question about whether his notes were correct. And I would point out that the board specifically pointed out that the immigration judge had implicitly found that the asylum officer was correct when he said that the petitioner, Mr. Gomez, did not indicate these further details of his detention. And I would point out that based on the law in this circuit, that the immigration officer was not specifically found not credible, and so this court would have to give his testimony due weight. That's the law of this circuit, and so we have an asylum officer who is found credible with testimony from Mr. Gomez and his wife that are found not credible. And so this ---- So I would submit to the court that what the asylum officer said is indeed credible, and again goes to substantial evidence supporting the immigration judge's finding that petitioners were not credible. I would also point out that there are not only inconsistencies but omissions, and those inconsistencies and omissions are somewhat confusing because it depends on what you're looking at. For example, the petitioners gave ---- Mr. Gomez, rather, gave different testimony with respect to when he moved. First he said it was ---- I believe he told the asylum officer it was in March of 1993, but his testimony before the immigration judge was a few days after he was released from the hospital, which would have been in January of 1992, I believe. And this ---- so that's inconsistent. It's also an ---- and if you look at the asylum application itself, he omitted any discussion about moving, and so we have not only inconsistencies but omissions. And as I think I pointed out before, there was no mention of his wife going to the hospital, to the asylum officer, there was no mention of the house burning down. That was something that they raised in the immigration proceedings before the immigration judge. They didn't raise this in front of the asylum officer, and this was their opportunity to explain in front of the asylum officer their claims in support of their application for asylum, and they didn't mention any of those. It's ---- okay, go ahead. I'm sorry. It's Respondent's position that all of these inconsistencies and omissions are substantial evidence which support the adverse credibility finding in this case. I take it that the wife's testimony went more to the husband's being persecuted. That is, she testified that she was raped because they were after the husband? Is that ---- Yes. In fact, I think it was that the police in 1993 came to the house looking for the husband, but she did file her own separate application for asylum, yes. If there aren't any further questions, again, we would submit that the case is supported by substantial evidence. Thank you. Your Honor, I would also like to further discuss the 1996 asylum application. We were not the attorneys who prepared that application. If you look at the 1996 application, it contains many misspellings, incomplete English grammar, incomplete English sentences. There is no signature from our office. However, what? It wasn't ---- I believe the Respondent misspoke when he was under the misbelief that we prepared the application. However, I don't remember the name of the number of the transcript. I did raise that with the court, explaining to her that I did review the asylum application with him, not that we were the one who prepared it. With respect to the female Respondent, the big picture is this. She suffered imputed political opinion, and she was sexually assaulted. There's not an issue whether it was actually rape or sexual advances. She was consistent that she did suffer some harm. She believed she was raped. Imputed political opinion? Because her husband, the petitioner, due to his active associations with the student union, the workers' union, the national police thought that he was a subversive, a guerrilla. But what was the evidence that he was ---- that his political ---- that they imputed his political opinion? Because she testified that when the national police came to her house, they said, we're doing this to you so that your husband would stop messing with the government, that she did provide testimony to that. So they were trying to harm her. That's the basis of the imputed political opinion? Yes, for the basis of the imputed political opinion. Thank you. Thank you. Okay. Okay. The case just argued is submitted for decision. We'll hear the next case, which is Perez.
judges: Schroeder, Goodwin, Tashima